J-S46017-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 984 EDA 2019 |

Appeal from the Order Entered March 12, 2019
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-DP-0002929-2015,
FID# 51-FN-002450-2015

| | | |
|---|---|---|
| IN THE INTEREST OF: S.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 986 EDA 2019 |

Appeal from the Order Entered March 12, 2019
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-DP-0002930-2015,
FID# 51-FN-002450-2015

J-S46017-19

| | | |
|---|---|---|
| IN THE INTEREST OF: M.S.C., A MINOR | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.C., MOTHER | : : : : : : : | |
| | : | No. 987 EDA 2019 |

Appeal from the Decree Entered March 12, 2019
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-AP-0000993-2017,
FID# 51-FN-002450-2015

| | | |
|---|---|---|
| IN THE INTEREST OF: S.H.D., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.C., MOTHER | : : : : : : : | |
| | : | No. 990 EDA 2019 |

Appeal from the Decree Entered March 12, 2019
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-AP-0000994-2017,
FID# 51-FN-002450-2015

BEFORE:   PANELLA, P.J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.:                    **FILED DECEMBER 11, 2019**

J.C. ("Mother") appeals from the decrees and orders entered on March 12, 2019, granting the petitions filed by the Philadelphia Department of Human Services ("DHS") to terminate her parental rights to her minor children, M.C. a/k/a M.S.C. (a male born in April 2011); and S.D. a/k/a S.H.D.

---

[*] Retired Senior Judge assigned to the Superior Court.

- 2 -

(a female born in September 2013) (collectively, "the Children"), pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(2), (5), (8), and (b), and change the permanency goals for the Children to adoption under the Juvenile Act, 42 Pa.C.S. § 6351.[1]  We affirm.

The facts and procedural background of this case are as follows.[2]  This family became known to DHS in October 2015 when DHS received a General Protective Services ("GPS") report that the Children were living in deplorable conditions.  N.T. Hearing, 11/28/15, at 15.  DHS obtained orders of protective custody for the Children on November 10, 2015.  **Id.**  On November 18, 2015, the Children were adjudicated dependent and have remained in DHS custody in kinship care since that time.  Mother's single case plan objectives were for her to attend anger management, domestic violence, and parenting classes; to obtain appropriate housing and employment; to complete drug and alcohol treatment; and to attend twice-weekly visits with Children.  **Id.** at 16-17.  Due to Mother's failure to meet the aforementioned objectives, on October 11,

_____

[1] On March 12, 2019, the trial court also entered decrees terminating the parental rights of the Children's unknown father(s).  **See** N.T. Hearing, 3/12/19, at 2-22.  The unknown father(s) has/have not appealed the termination of his/their parental rights and the Children's goal changes, nor has any unknown father filed a brief or participated in the instant appeal.

[2] In a document captioned "Trial Court's Notice of Compliance With Rule of Appellate Procedure 1925(a)," the trial court noted the places in the record where it set forth its findings with regard to this appeal, as well as the testimony which it found credible and the exhibits upon which it relied, which we adopt herein.  **See** Trial Court's Notice of Compliance, 5/21/19, at 1-2.

2017, DHS filed goal change petitions for the Children, seeking to change the permanency goals for the Children to adoption. On that same date, DHS also filed petitions to terminate Mother's parental rights to the Children. The trial court held termination/goal change hearings on July 20, 2018, November 28, 2018, and March 12, 2019.[3]

The following testimony was elicited during the November 28, 2018 hearing. First, Breanne Wilson, the Community Umbrella Agency ("CUA") Turning Points for Children social worker testified and explained that she observed Mother's visits with the Children, and she rated the visits as "poor." *Id.* at 25. Specifically, Wilson stated that Mother brought food and clothing for the Children, but the visitations were "always erratic" and the Children were "always out of control." *Id.* Wilson further explained that the communication between Mother and Children is not effective, which results in the Children bonding to each other during the visits, not with Mother. *Id.* at 25. In fact, during the visits, Mother yelled and screamed at the Children, and resisted instruction to approach the Children in a different manner to calm their behavior. *Id.* at 28. Wilson, however, admitted that the Children do love their Mother. *Id.* at 31.

---

[3] Attorney Lisa Visco was appointed to represent the Children as their legal interests counsel and Attorney Daniel Silver was appointed as guardian *ad litem* ("GAL"). *See In re Adoption of L.B.M.*, 161 A.3d 172, 179-180 (Pa. 2017).

Next, Carrie-Ann Russell, the case manager/supervisor for CUA Turning Points for Children testified and questioned Mother's ability to care for the Children without ongoing support, explaining that she did not think, "[Mother] is able to do it on her own at this time." *Id.* at 81. John Hall, the CUA supervisor, also testified and stated that he observed Mother's visits with the Children, and noted that Mother did not really engage them. *Id.* at 100. Based on her lack of engagement, CUA twice referred Mother to Family School, but Mother refused to attend, and, based on Family School's recommendations, the CUA did not recommend unsupervised visits. *Id.* at 28, 101.

Finally, Mother testified. In discussing her inability to control M.C., Mother testified that, if CUA allowed her to do so, she would "pop[]" him, or hit him, so as to control his behavior. *Id.* at 158. Mother admittedly tested positive for marijuana in December 2017. *Id.* at 159-160. Mother also tested positive for marijuana in February 2016 and May 2017. DHS Exhibits 5 and 10. Mother did not seek drug and alcohol treatment. N.T. Hearing, 11/28/18, at 24.

At the time of the hearing on November 28, 2018, Mother lacked appropriate housing, but she provided documentation that she was employed. *Id.* at 29. Breanne Wilson testified that Mother did not complete the anger management classes. *Id.* Mother continued to have a "very short temper," "cussing," "screaming," and having "no control" over how she talked to CUA

staff. *Id.* at 30. Mother's behavior led CUA to be concerned that Mother would be unable to control her temper around the Children. *Id.* at 31.

M.C. is diagnosed with "upbringing away from parents"; a sleeping disorder; enuresis (bedwetting); Attention Deficit Hyperactivity Disorder ("ADHD"); Oppositional Defiance Disorder ("ODD"), and Post-Traumatic Stress Disorder ("PTSD"). *Id.* at 35, 63. S.D. also has been diagnosed with PTSD, and she approaches strangers and seeks attention from anyone and everyone. *Id.* Carrie-Ann Russell testified that Mother lacks a healthy maternal relationship with M.C. because she cannot control him without yelling at him. *Id.* at 83. Wilson opined that, although M.C. loves Mother, he needs to be with a caregiver who can provide him with nurturing, and she had not observed Mother nurture him during the visits. *Id.* 35-36. Carrie-Ann Russell agreed that the termination of Mother's parental rights would be in M.C.'s best interests, and that M.C. looks to his current caregiver to meet his needs. *Id.* at 83.

Breanne Wilson testified that the termination of Mother's parental rights would not result in irreparable harm to S.D. *Id.* at 37. Wilson stated that S.D. is too young to understand what is happening, and she has called many people "mom," including Mother, Wilson, and the Children's current caregiver. *Id.* Mother does not do much beyond bringing items for the Children to the visits, do S.D.'s hair, and feed her. *Id.* at 38. S.D.'s therapeutic nursery has reached out to Mother, but she makes no effort to become involved. *Id.* S.D.

looks to her current caregiver to meet her needs, and S.D. is bonded to the caregiver. ***Id.*** at 39-40.

On March 12, 2019, the trial court entered the decrees and orders granting the petitions seeking to involuntarily terminate Mother's parental rights to the Children pursuant to section 2511(a)(2), (5), (8), and (b), and change the Children's permanency goal to adoption. This timely appeal followed.[4]

In her brief on appeal, Mother raises the following issues:

1. Whether the trial court erred by terminating the parental rights of [M]other pursuant to 23 Pa.C.S.A. [§] 2511(a)(2) without clear and convincing evidence of [M]other's present incapacity to perform parental duties[?]

2. Whether the trial court erred by terminating the parental rights of [M]other pursuant to 23 Pa.C.S.A. [§] 2511(a)(5) without clear and convincing evidence to prove that reasonable efforts were made by [DHS] to provide [M]other with additional services and that the conditions that led to placement of the [C]hildren continue to exist[?]

3. Whether the trial court erred by terminating the parental rights of [M]other pursuant to 23 Pa.C.S.A. [§] 2511(a)(8) without clear and convincing evidence that the conditions that led to placement of the [C]hildren continue to exist when [M]other presented evidence of compliance with the goals and objectives of her family service plan[?]

4. Whether the trial court erred by terminating the parental rights of [M]other pursuant to 23 Pa.C.S.A. [§] 2511(b) without clear

---

[4] On April 3, 2019, Mother filed separate notices of appeal, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On April 26, 2019, this Court, acting *sua sponte*, consolidated the appeals.

and convincing evidence that there is no parental bond between [M]other and [C]hildren[,] and that termination would serve the best interest of the [C]hildren[?]

Mother's Brief, at 7.[5]

On appeal, Mother argues that the trial court erred in terminating her parental rights under section 2511(a)(2), (5), (8), and (b), because there was no clear and convincing evidence to support the termination orders. *Id.* at 9. With respect to section 2511(a)(2), Mother asserts that there was no clear and convincing evidence of her present incapacity to perform parental duties. *Id*. at 12. With regard to section 2511(a)(5), Mother contends that there was no clear and convincing evidence to prove that DHS made reasonable efforts to provide her with additional services and that the conditions that led to the placement of the Children continue to exist. *Id*. With respect to section 2511(a)(8), Mother argues that there was no clear and convincing evidence that the conditions that led to the placement of the Children continue to exist, when Mother presented evidence of her compliance with the goals and objectives of her family service plan. *Id*. at 13. Finally, regarding section

_____

[5] Although Mother stated her issues somewhat differently in her concise statement, we find that she preserved the issues for our review. *See Krebs v. United Refining Company of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and the statement of questions involved in his brief on appeal). However, to the extent that Mother failed to raise a challenge to the change in the Children's permanency goal to adoption in her statement of questions involved section of her brief, any such challenge is waived.

2511(b), Mother contends that there was no clear and convincing evidence that there is no parental bond between the Children and her and that termination would serve the Children's best interest. *Id.* at 14-15.

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, 36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*
>
> As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-827 (2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, we have explained, "[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.*, *quoting In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). We conclude that termination was proper under section 2511(a)(2).

Sections 2511(a)(2) and (b) provide, in relevant part, as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

The Supreme Court set forth our inquiry under section 2511(a)(2) as follows.

As stated above, § 2511(a)(2) provides statutory grounds for termination of parental rights where it is demonstrated by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." . . .

This Court has addressed incapacity sufficient for termination under § 2511(a)(2):

> A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.

*In re Adoption of J.J.*, 515 A.2d 883, 891 (Pa. 1986), *quoting In re: William L.*, 383 A.2d 1228, 1239 (Pa. 1978).

*In re Adoption of S.P.*, 47 A.3d at 827. This Court has long recognized that a parent is required to make diligent efforts towards the reasonably prompt

- 11 -

assumption of full parental responsibilities. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.* at 340.

In reviewing the evidence in support of termination under section 2511(b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, section 2511(b) does not require a formal bonding evaluation." *In re Z.P.,* 994 A.2d at 1121 (internal citations omitted). Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances . . . where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." *In re K.Z.S.*, 946 A.2d 753, 762 (Pa. Super. 2008).

A parent's abuse and neglect are likewise a relevant part of this analysis:

> concluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent . . . Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted). Thus, the court may emphasize the safety needs of the child. *See In re K.Z.S.*, 946 A.2d at 763 (affirming involuntary termination of parental rights, despite existence of some bond, where placement with mother would be contrary to child's best interests).

At the hearing on March 12, 2019, the trial court stated as follows:

> With respect to the [DHS'] request pursuant to [Section] 2511(a)[(2), this section] indicates: "The repeated incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for it's [*sic*] physical or mental wellbeing[,] and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

> With respect to this case[,] the testimony from the CUA case manager[,] when we did the hearing on [November 28, 2019] and I did find their testimony credible, was that [Mother] had objectives[:] housing, parenting, domestic violence, [and drug and alcohol] randoms. [Mother] actually, on her own, and I found her credible, still admitted that she had tested positive for substances since the petitions were filed.

- 13 -

CUA testified that [Mother] was unable to manage [M.C.'s and S.D.'s] behavior during the visits, [and] that she frequently had to be re[-]directed. That [Mother] often brought other individuals to visits instead of focusing on the visits, herself. That she would sit and direct [M.C. and S.D.] from where she sat as opposed to interacting with them. That[,] in fact[,] on one visit in particular[,] [Mother] came with another child that was not a sibling to any of these children[,] and spent most of her time holding that child during the visit.

So[,] I am going to find that based on [Mother's] continued testing positive for drugs and alcohol – CUA[,] I believe[,] also testified that [Mother] was minimally compliant. She did not have housing. [Mother] had been referred to [F]amily [S]chool in 2016 and in 2018[,] but had declined [F]amily [S]chool[,] and[,] in fact[,] [F]amily [S]chool had made a determination after the second referral that they did not believe [Mother] was appropriate for [F]amily [S]chool. [Mother] did not complete anger management.

\*\*\*

And that CUA indicated that even if [Mother] had completed the anger management[,] she still had a short temper. She continued to snap out. She'll start cursing and screaming. That her behaviors were directed at staff as well as the CUA worker. [Thus, the trial court terminated Mother's rights involuntarily pursuant to Section 2511(a)(2)].

\*\*\*

With respect to [Section] 2511(b), the testimony from CUA was that [M.C.] and [S.D.] are doing well in their kinship home. That the relationship they have with their [Mother] is not that of a mother[-]child relationship. I did find CUA's testimony around the [C]hildren's relationship [and bond] with [Mother] [] to be credible.

CUA did not believe the [C]hildren would suffer any irreparable harm if [Mother's] rights were terminated because they were in foster homes where their needs were being met and they were doing very well in those homes[,] and the consistency that remaining in those homes would provide[,] would help mitigate any damage that could potentially be caused.

- 14 -

\*\*\*

With respect to [S.D.], CUA testified that there would be no irreparable harm if [Mother's] rights were terminated. [Mother] did not have the ability to set appropriate boundaries. That [S.D.] in fact was just looking for someone to be able to connect with[,] and have some stability[,] and be able to call mom. And[,] so[,] biological [Mother] was not the only person that she called mom.

That[,] in fact[,] she looked to her current caregiver to provide for her daily needs. And that as long as she is receiving the care and nurture she receives, she needs, in the home that she's in[,] she would be fine. CUA also testified that the bond between [S.D.] and [Mother] was not that of a mother[-]child bond for both of them.

Based on that testimony[,] I will find that it is in their best interest to have the permanency that they deserve. And I will find that there will not be any detrimental impact to terminating involuntarily [Mother's] rights to either child[.]

N.T. Hearing, 3/12/19, at 11-17.

We conclude that the trial court's credibility and weight determinations, and its decision to terminate the parental rights of Mother are supported by competent, clear and convincing evidence in the record. *In re Adoption of S.P.*, 47 A.3d at 826-827. In *In re T.S.M.*, *supra*, our Supreme Court stated:

As with dependency determinations, we emphasize that the law regarding termination of parental rights should not be applied mechanically but instead always with an eye to the best interests and the needs and welfare of the particular children involved. *See, e.g., R.J.T.*, 9 A.3d at 1190 (holding that statutory criteria of whether child has been in care for fifteen of the prior twenty-two months should not be viewed as a "litmus test" but rather as merely one of many factors in considering goal change). Obviously, attention must be paid to the pain that inevitably results from breaking a child's bond to a biological parent, even if that bond is unhealthy, and we must weigh that injury against the damage that bond may cause if left intact. Similarly, while

- 15 -

termination of parental rights generally should not be granted unless adoptive parents are waiting to take a child into a safe and loving home, termination may be necessary for the child's needs and welfare in cases where the child's parental bond is impeding the search and placement with a permanent adoptive home.

*In re T.S.M.*, 71 A.3d at 268-269. Thus, the trial court did not commit an abuse of discretion in terminating Mother's parental rights to the Children simply because there is no pending adoption for them. The trial court amply supported its decision to terminate Mother's parental rights to the Children with the testimony and other evidence from the record. We, therefore, affirm the termination decrees and goal change orders on the basis of the reasoning provided by the trial court. *See* N.T., 3/12/19, at 11-19.

Decrees and orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/11/19